IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELISSA BALLAS**, | : | |
| Plaintiff, | : | |
| | : | **Civil Action No.** |
| v. | : | |
| | : | |
| **EQUIS RESEARCH,** | : | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | : | |

<u>**COMPLAINT — JURY TRIAL DEMANDED**</u>

Plaintiff, Melissa Ballas, by and through her undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendant and states as follows:

<u>**PROCEDURAL AND ADMINISTRATIVE REMEDIES**</u>

1. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

2. Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging discrimination based on race, disability, and retaliation.

3. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

<u>**PARTIES**</u>

4. Plaintiff Melissa Ballas, a White woman, was previously employed by Equis Research ("Equis") as a PTC Generalist and Talent Partner. She resides at 618 Walnut St., Emmaus, PA 18049.

1

5. Defendant Equis Research, upon information and belief, employs approximately 55 employees.

## FACTUAL BACKGROUND

*Plaintiff's Employment and Exemplary Performance*

6. Ms. Ballas began her employment with Equis Research on August 21, 2023.

7. Throughout her tenure, Ms. Ballas consistently delivered exceptional performance.

8. In both her 2023 and 2024 annual performance reviews, Ms. Ballas received top marks and was praised for exceeding expectations, leading an innovative and proactive team, and fostering a genuinely inclusive and diverse workplace culture.

9. On October 28, 2024, in recognition of her outstanding performance, Equis promoted Ms. Ballas to PTC Generalist and Talent Partner.

10. From approximately December 2024 through May 2025, Ms. Ballas single-handedly managed both her own role and the responsibilities of her colleague, Tatiana Ramirez, who was on maternity leave.

*Systemic Race Discrimination at Equis Research*

11. Multiple events and communications during Plaintiff's employment reflected racial hostility toward White employees.

12. An external HR investigator retained by Equis documented in contemporaneous notes that there was a "[f]ear of discrimination against someone who isn't latino" and that Equis leadership was "not crazy about white people around here."

13. Multiple team members raised concerns to the external investigator about racial preferences in hiring and retention decisions.

2

14. Anonymous employee survey responses at Equis included statements urging the company to "stop hiring white people."

15. As part of Equis's formal performance review process, a Latino employee submitted a peer evaluation of a White employee that included a comment referencing the employee's "white privilege."

16. A qualified White candidate was selected for the Payroll/Benefits Manager position but was subsequently rejected by leadership. During an HR team meeting, when team members pushed back on why the candidate they had selected was not being hired, Ms. Ballas's supervisor, Marisela Maldonado, the Director of PTC, admitted that leadership rejected the candidate because she was "older and white."

*Exclusion from DEI Programming Based on Race*

17. In or around January 2024, Ms. Ballas's department organized a DEI webinar.

18. Ms. Ballas was explicitly excluded from the webinar, which was designated for "practitioners of color" and described as "not for white folks" and designed to "decenter whiteness."

19. This exclusion was documented in contemporaneous email communications.

*Plaintiff's Protected Complaints of Discrimination*

20. Ms. Ballas immediately reported the discriminatory exclusion described in Paragraphs 17–19 to her direct supervisor, Marisela Maldonado, the Director of PTC.

21. Ms. Maldonado failed to take corrective action and instead indicated that they would simply provide Ms. Ballas with "a synopsis... a bit of an update after" the webinar, thereby confirming rather than addressing the discriminatory exclusion.

3

22. On January 23, 2024, Ms. Ballas submitted a formal written complaint via email to Elis Ribeiro, the Chief Financial and Administrative Officer ("CFAO"), who reported directly to the CEO.

23. In her written complaint, Ms. Ballas stated that her exclusion from the DEI webinar was "very hurtful and makes me feel even less like I belong in my department."

*The Pretextual "Restructure"*

24. Equis claims it made the decision to downsize the PTC team in September 2024.

25. This assertion is contradicted by the company's own actions. If Equis had decided to eliminate Ms. Ballas's position in September 2024, it defies logic that Equis would promote her to PTC Generalist and Talent Partner on October 28, 2024 — just seven months before her termination.

26. When another department at Equis underwent downsizing, the CEO explicitly assured the PTC team in a department-wide meeting that they would not be affected.

27. Internal notes from CFAO Elis Ribeiro's meeting with the external HR investigator reference discussions about potentially terminating Ms. Ballas's supervisor, Marisela Maldonado, and restructuring the team, but nowhere do these notes mention eliminating the entire PTC team or Ms. Ballas's position specifically.

28. The investigator's notes reference a restructured team consisting of "HR Manager, HR Generalist, HR Coordinator" — positions that align with maintaining, not eliminating, core HR functions.

*Plaintiff's Disability Disclosure*

29. On May 15, 2025, during a one-on-one meeting with HR contractor Alex Schwartz, Ms. Ballas disclosed that she had recently been diagnosed with lupus, a serious autoimmune

4

condition that substantially limits major life activities including, but not limited to, immune system function.

30. Lupus is a disability within the meaning of the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

31. During this same meeting, Ms. Ballas also inquired about a promised coverage bonus that had not been provided.

*Termination One Week After Disability Disclosure*

32. Exactly one week after disclosing her lupus diagnosis, on May 22, 2025, Ms. Ballas was abruptly terminated.

33. The timing of Ms. Ballas's termination — exactly seven days after her disability disclosure — raises a strong inference of disability discrimination and retaliation.

34. Equis claims that the decision to eliminate Ms. Ballas's position predated her disability disclosure. However, Equis has produced no documentation supporting this assertion, and the claim is contradicted by the timeline set forth above, including Ms. Ballas's promotion in October 2024 and the CEO's assurance that the PTC team would not be affected by downsizing.

*Replacement by Less Qualified Employee Outside Protected Class*

35. Following Ms. Ballas's termination, Estefania Gonzalez, a Latina employee with no HR background or experience, assumed Ms. Ballas's core job duties.

36. A text message from retained employee Tatiana Ramirez dated June 5, 2025, confirmed that Ms. Gonzalez was going to "start HR training soon" and would "be handling all the fun culture events, L&D and performance reviews soon enough."

37. Performance management was exclusively Ms. Ballas's responsibility prior to her termination.

38. Despite Equis's characterization that Ms. Gonzalez holds a "different role," the documentary evidence demonstrates that Ms. Gonzalez assumed the core functions of Ms. Ballas's former position.

39. Ms. Gonzalez had been inexplicably shadowing Ms. Ballas in the weeks before her termination.

*Disparate Treatment of Similarly Situated Employees*

40. Tatiana Ramirez, a Latina employee, had been flagged multiple times for poor performance.

41. Ms. Ramirez was on maternity leave from approximately December 2024 through May 2025, during which time Ms. Ballas single-handedly managed both her own responsibilities and Ms. Ramirez's duties.

42. Despite her documented performance deficiencies, Ms. Ramirez was retained while Ms. Ballas — who received exemplary performance reviews and a recent promotion — was terminated.

43. Ms. Ramirez was tasked with training Ms. Ballas's replacement.

*Post-Termination Disparagement*

44. Following Ms. Ballas's termination, HR contractor Alex Schwartz — the same individual to whom Ms. Ballas had disclosed her lupus diagnosis — made disparaging remarks about Ms. Ballas to retained employees.

45. Ms. Schwartz's post-termination conduct further supports the inference of discriminatory and retaliatory animus.

## COUNT I
### Violations of 42 U.S.C. § 1981
*Race Discrimination; Hostile Work Environment; Retaliation*

46. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

47. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

48. Plaintiff had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

49. Plaintiff was an at-will employee, which implicates her right to make and enforce contracts.

50. Defendant abridged Plaintiff's right to make and enforce contracts by its discriminatory conduct toward Plaintiff.

51. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges, and benefits of her employment contract with Defendant.

52. Defendant, by and through its supervisors and leadership, intentionally discriminated against Plaintiff on the basis of race.

53. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held, as demonstrated by her exemplary performance reviews and recent promotion.

54. Defendant maintained and enforced a custom of discriminatory decision-making practices, including racial preferences in hiring and retention, explicit exclusion of White employees from workplace programming, and replacement of a high-performing White employee with a less qualified employee of a different race.

55. Defendant fostered and perpetuated a hostile work environment targeting White employees, characterized by documented anti-White bias from leadership, anonymous surveys urging the company to "stop hiring white people," and a peer review in which a Latino employee inappropriately critiqued a White colleague for failing to recognize "white privilege."

56. Defendant's actions altered Plaintiff's work environment. The discrimination that Plaintiff faced detrimentally affected Plaintiff, and this discrimination would detrimentally affect a reasonable person in similar circumstances.

57. This severe and pervasive environment continued throughout Plaintiff's employment.

58. Defendant is liable for its supervisors under respondeat superior.

59. Plaintiff participated in protected conduct by formally reporting race discrimination to her supervisor and to the CFAO. Defendant retaliated against Plaintiff because of her participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment actions from which Plaintiff suffered.

60. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

61. The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

## COUNT II
**Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**
*Race Discrimination; Retaliation; Hostile Work Environment*

8

62. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

63. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under Title VII.

64. Defendant is a covered employer under Title VII and employs more than 15 employees.

65. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges, and benefits of Plaintiff's employment with Defendant.

66. Defendant, by and through its supervisors and leadership, intentionally discriminated against Plaintiff on the basis of race.

67. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

68. Defendant's actions altered Plaintiff's work environment. The discrimination that Plaintiff faced detrimentally affected Plaintiff, and this discrimination would detrimentally affect a reasonable person in like circumstances.

69. This severe and pervasive environment continued throughout Plaintiff's employment.

70. Defendant is liable for its supervisors under respondeat superior.

71. Plaintiff participated in protected conduct. Defendant retaliated against Plaintiff because of her participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

72. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

73. The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

74. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT III**
**Violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**
*Discrimination on the Basis of Disability*

75. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

76. Defendant is a covered employer under the Americans with Disabilities Act ("ADA") and employs more than 15 employees.

77. Plaintiff is an individual with a disability within the meaning of the ADA, specifically lupus, a serious autoimmune condition that substantially limits major life activities including immune system function.

78. Plaintiff disclosed her disability to Defendant's HR contractor, Alex Schwartz, on May 15, 2025.

79. Defendant had actual notice of Plaintiff's disability.

80. Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation, as demonstrated by her exemplary performance reviews and recent promotion.

81. Defendant discriminated against Plaintiff on the basis of her disability by terminating her employment exactly one week after her disability disclosure.

10

82. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages unless and until the Court grants the relief requested.

**COUNT IV**
**Violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**
*Retaliation*

83. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

84. Defendant is a covered employer under the Americans with Disabilities Act ("ADA") and employs more than 15 employees.

85. Plaintiff engaged in protected activity under the ADA by disclosing her disability (lupus) to Defendant's HR contractor on May 15, 2025.

86. Defendant was aware of Plaintiff's protected activity.

87. Following Plaintiff's disclosure of her disability, Defendant subjected Plaintiff to an adverse employment action by terminating her employment on May 22, 2025 — exactly one week after her disclosure.

88. There is a causal connection between Plaintiff's protected activity under the ADA and the adverse employment action taken against her. The temporal proximity between Plaintiff's disability disclosure on May 15, 2025, and her termination on May 22, 2025, demonstrates a retaliatory motive.

89. Defendant's proffered reasons for the adverse employment action are pretextual and were motivated by retaliation for Plaintiff's exercise of her rights under the ADA.

90. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, emotional distress, and other compensatory damages.

91. Defendant's retaliatory conduct was willful and in reckless disregard of Plaintiff's rights under the ADA.

**<u>COUNT V</u>**
**Violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.**
*Race Discrimination; Harassment; Retaliation; Disability Discrimination*

92. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

93. Defendant discriminated against Plaintiff on the basis of her race and disability by terminating her employment in violation of the Pennsylvania Human Relations Act ("PHRA").

94. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the PHRA.

95. Plaintiff is an individual within the class protected by the PHRA.

96. In discriminating against and harassing Plaintiff because of Plaintiff's race and disability, Defendant violated the PHRA.

97. Plaintiff engaged in protected activity by reporting race discrimination to Defendant's leadership and by disclosing her disability.

98. Defendant retaliated against Plaintiff by terminating her employment in violation of the PHRA.

99. As a direct and proximate result of Defendant's unlawful employment practices and retaliation, Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a) Enjoining and permanently restraining the violations alleged herein;

b) Declaring the acts and practices complained of herein to be in violation of 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 2000e, the ADA, 42 U.S.C. § 12101 et seq., and the PHRA, 43 P.S. § 951 et seq.;

c) Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under 42 U.S.C. § 1981; Title VII, 42 U.S.C. § 2000e; the ADA, 42 U.S.C. § 12101 et seq.; and the PHRA, 43 P.S. § 951 et seq.;

h) Awarding Plaintiff such other damages as are appropriate under any and all applicable federal laws;

i) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees;

j) A jury trial is demanded on all triable issues in this case; and,

k) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Date: March 18, 2026                                                    */s/ Andrew Lacy, Jr.*